**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff-Respondent,

v.                                  No.    CV 16-682 JCH/GJF
                                                CR 14-591 JCH

REYNALDO GRIEGO,

       Defendant-Petitioner.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ("PFRD")**

This matter is before me on Petitioner's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Motion").  Doc. 1[1].  Having reviewed all of the briefing (Docs. 1, 4, 5, 10) and the parties' joint submission expanding the record (Doc. 14), and otherwise being fully advised, I recommend the Motion be denied.[2]

## I.   BACKGROUND

On February 26, 2014, Petitioner and a co-defendant were charged by indictment with one count of conspiring to distribute more than 5 grams of methamphetamine and two counts of distributing more than 5 grams of methamphetamine.  Cr. Doc. 1.  Each of these charges carried a potential sentence of imprisonment of at least 5 but not more than 40 years.  *See* 21 U.S.C. §§ 841(a), 841(b)(1)(B), and 846 (2012).  Petitioner was arrested pursuant to the indictment on February 28, 2014.  Cr. Doc. 4, 5.  On March 26, 2014, the grand jury returned a Superseding Indictment against the original defendants and a third defendant.  Cr. Doc. 19.  The charges

---

[1] Citations to "Doc." refer to docket numbers filed in Case No. 16-CV-682 JCH/GJF.  Citations to "Cr. Doc." refer to the companion criminal docket, Case No. 14-CR-591 JCH.  For filings made on both dockets, only the civil docket number is given.

[2] Before issuing this PFRD, I considered whether an evidentiary hearing was necessary, as instructed by Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts.  Because this Motion is restricted only to matters of law and its disposition requires no further factual development, I concluded that no evidentiary hearing was necessary.

against Petitioner remained the same.  On September 10, 2014, Petitioner pleaded guilty to the conspiracy charge (Count 1) pursuant to a written plea agreement.  Cr. Docs. 58, 65.

Only a few provisions of the plea agreement are relevant to the instant Motion.  Petitioner acknowledged that the minimum and maximum sentences for his offense included "imprisonment for a period of not less than 5 years and not more than 40 years" and that the U.S. Sentencing Guidelines were advisory only.  Cr. Doc. 65, ¶¶ 4a, 5.  The parties stipulated pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the "appropriate sentence in this case is 120 months" of imprisonment.  *Id.* ¶ 10a.  The plea agreement was silent on the reasons why the parties agreed to that length of imprisonment.  The plea agreement was contingent upon one of Petitioner's co-defendants also pleading guilty.  *Id.* ¶ 12.  The United States agreed to dismiss the remaining counts against Petitioner at sentencing and promised not to bring any other charges against him arising out of the facts that gave rise to the Superseding Indictment.  *Id.* ¶¶ 15a, 15b.[3]

The only other provision of the plea agreement that is noteworthy was the factual basis admitted by Petitioner:

> I agreed to sell methamphetamine with my co-defendants from on or about January 30, 2014[,] to on or about February 27, 2014, in Albuquerque, NM.  I was the main person responsible for setting up the meetings and controlling the sale of methamphetamine.  DEA agents purchased methamphetamine from us on January 31, 2014[,] and February 11, 2014.  In total, I am responsible for 19.2 grams of actual methamphetamine.

*Id.* at ¶ 8.[4]

---

[3] In addition to waiving his appellate rights, Petitioner also agreed to waive all of his other post-conviction rights – including motions pursuant to 28 U.S.C. § 2255 – except those based on the narrow ground of ineffective assistance of counsel.  Cr. Doc. 65, ¶ 14.  The United States has not invoked this waiver in its defense to the instant motion, despite Petitioner's overt references to the availability of this argument.  *See* Doc. 1 at 4, 5.  Accordingly, I conclude that the United States has forfeited this argument and I will not address it further.  *See, e.g., United States v. Contreras–Ramos,* 457 F.3d 1144, 1145 (10th Cir. 2006) ("the waiver is waived when the government utterly neglects to invoke the waiver").

[4] In their briefing, neither party attached the transcript of, nor otherwise meaningfully referred to, the change-of-plea

On February 19, 2015, U.S. Probation Officer Danielle Padilla disclosed her Presentence Investigation Report (hereafter "PSR"), which set forth additional factual information related to Petitioner's offense of conviction.  PSR ¶¶ 11-22.[5]  At ¶ 34, the PSR recommended that the Court find that Petitioner was a career offender under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1 (2016).  In making this recommendation, the PSR emphasized that the instant offense was a controlled substance offense and that Petitioner had a previous federal conviction for a controlled substance offense (CR 98-988 BB, D.N.M.) and a previous state aggravated assault with a deadly weapon conviction (D202CR201302614, 2nd Judicial District Court, NM).  PSR ¶ 29.[6]  In addition to chronicling Petitioner's extensive criminal history in ¶¶ 40-54, the PSR recommended an adjusted offense level of 31, a criminal history category of VI, and a resulting guideline imprisonment range of 188-235 months.  PSR ¶¶ 37, 57-58, 101.  In its final paragraph, the PSR concluded that "[b]ased on the above factors, and in consideration of 18 U.S.C. § 3553(a)(1)-(7), a sentence of 120 months custody in accordance with the Rule 11(c)(1)(C) plea agreement appears to be an appropriate sentence in this case."  PSR ¶ 119. Petitioner filed no objections to the PSR.

On March 10, 2015, the Court held a sentencing hearing.  Cr. Doc. 90.[7]  At the outset, Petitioner's counsel alerted the Court that Petitioner's criminal history points may have been miscounted.  Tr. 3-4.  After a short discussion with the probation officer, the Court agreed to

---

colloquy.  Nonetheless, in preparation for issuing this PFRD, I listened to the audio-recording of the hearing.  Aside from the normal back-and-forth that describes the entry of a guilty plea pursuant to a plea agreement, there was nothing in the colloquy that in any way touched on the issues presented in the instant Motion.  Most specifically, there was no reference to the existence or legal effect of any of Petitioner's prior convictions and no discussion of the possibility of Petitioner being classified (or not) as a career offender under U.S.S.G. § 4B1.1.

[5] Consistent with long-standing practice, the PSR was disclosed to the Court and both parties.  Where relevant, I cite to the PSR.  Given the sensitive nature of some of the information the PSR contains, however, I have opted not to attach it hereto.

[6] The PSR alleged these convictions were qualifying felony offenses in summary fashion, without explaining how they fit within the definitions of "controlled substance offense" or "crime of violence" under § 4B1.2.

[7] A copy of the transcript is appended hereto as Attachment 1.  All references to it appear as "Tr. __."

reduce the total number of criminal history points to 16.   Tr. 5.   Petitioner's counsel acknowledged that the modification made no difference.   *Id.*   Neither Petitioner nor his counsel objected to any other portion of the PSR, whether factual, legal, or otherwise.   The Court thereafter accepted the Rule 11(c)(1)(C) plea agreement and sentenced Petitioner to a 120-month term of imprisonment. Tr. 9, 11.   The Court announced itself "satisfied that the agreed sentence is justified," even though it represented a substantial variance from the guideline imprisonment range that Petitioner would otherwise have been subjected to as a career offender.  Tr. 11.   There was no discussion at the hearing about how or why Petitioner's current and prior convictions qualified him as a career offender under § 4B1.1.   The Court filed its Amended Judgment on March 12, 2015.  Cr. Doc. 94.  Having waived his right to appeal, Cr. Doc. 65, ¶ 14, Petitioner did not appeal his sentence.

The instant Motion is Petitioner's first attempt to collaterally attack his sentence.  In it, he argues that his prior conviction for aggravated assault against a household member with a deadly weapon – on which his designation as a career offender necessarily was based – no longer qualifies as a "crime of violence" in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). Doc. 1 at 3.   He contends that *Johnson* should apply retroactively to reduce the adjusted guideline range he would have faced from 188-235 months to 77-96 months.  *Id.* at 4.  He asserts that his 120-month sentence then should be vacated because he never would have agreed to a sentence that was 24 months longer than the top end of what should have been the appropriate range.  *Id.* at 2.

For its part, the United States contends that New Mexico's aggravated assault with a deadly weapon statute remains a crime of violence for Sentencing Guidelines purposes irrespective of *Johnson*, because it has "as an element the use, attempted use, or threatened use

of physical force against the person of another." Doc. 5 at 3 (quoting U.S.S.G. § 4B1.2(a)(1)). Furthermore, the United States urges the Court to conclude that *Johnson* does not have retroactive application to Sentencing Guidelines cases pending on collateral review. Doc. 5 at 5-13.[8]

On January 12, 2017, I ordered the parties to supplement the record in this case to include the plea agreement and the judgment and sentence document from Petitioner's New Mexico aggravated assault case. Doc. 13. The parties complied on January 20, 2017. Doc. 14.

Because of my view that the application of *Johnson* to the Sentencing Guidelines should not be given retroactive effect, and because the Tenth Circuit has recently held that New Mexico's aggravated assault with a deadly weapon statute remains a crime of violence under the Sentencing Guidelines, I recommend denying the Motion.[9]

## II. ANALYSIS

### A. Is *Johnson* Retroactive to Guidelines-Only Cases on Collateral Review?

In *Johnson*, the Supreme Court held that the residual clause of the definition of "violent felony" under the Armed Career Criminal Act ("ACCA") is unconstitutionally vague. 135 S. Ct.

---

[8] The United States alternatively requested a stay pending the Supreme Court's decision in *Beckles v. United States* (S. Ct. No. 15-8544). Doc. 5 at 13-14. Although the Supreme Court heard argument in *Beckles* on November 28, 2016, and a decision in that case will occur long before Petitioner would be released from prison even under the modified sentence he requests, I recommend that the Court deny the motion to stay and reach the merits as set forth in this PFRD.

[9] As an initial matter, I am skeptical of Petitioner's claim that he would not have entered into a 120-month plea agreement had he known he was not a career offender. *See* Doc. 1 at 2 ("[i]t is clear, therefore, that Mr. Griego entered into the Rule 11(c)(1)(C) plea agreement *because of* the career offender guidelines") (emphasis added). After all, there is no evidence before me that, at the time he pleaded guilty, Petitioner knew or suspected he was a career offender. As Chief Magistrate Judge Lorenzo Garcia advised Petitioner during the plea hearing, no pre-sentence report had yet been prepared. As it turns out, that PSR was not disclosed until more than five *months* after Petitioner pleaded guilty. In association with the instant Motion, Petitioner has not provided the Court with any correspondence between government and defense counsel in which his potential status as a career offender was ever discussed. Nor has he submitted any affidavits from himself or his attorney to that effect. In my view, Petitioner has failed to carry his burden to demonstrate that his plea agreement had anything to do with his status as a career offender. It is just as likely – especially in a case in which he had no reasonable defense – that he accepted the plea because 120 months was the *minimum* sentence for someone charged with a B-level drug offense with a prior drug trafficking conviction, and the plea would ensure that he served no more time than that. Nonetheless, because the United States does not argue this point, I note it only in passing.

at 2563.  Until its demise, the residual clause appeared at the end of 18 U.S.C. § 924(e)(2)(B)(ii),
which in full read:  "is burglary, arson, or extortion, involves use of explosives, *or otherwise
involves conduct that presents a serious potential risk of physical injury to another*[.]"  18 U.S.C.
§ 924(e)(2)(B)(ii) (2012) (emphasis added).   In so holding, the Supreme Court ruled that
individuals could not be subject to the ACCA if any of their three requisite prior convictions
qualified as "violent felonies" only under the invalidated residual clause.  135 S. Ct. at 2563.
Then, in *Welch v. United States*, the Supreme Court announced that *Johnson* would apply
retroactively to cases on collateral review, reasoning that *Johnson* announced a new substantive
rule.  136 S. Ct. 1257, 1264-65 (2016).

Here, Petitioner was not sentenced as an "armed career criminal" under the ACCA, but
rather a "career offender" under § 4B1.1 of the advisory Sentencing Guidelines.  That provision
considerably increases the offense level for an adult offender being sentenced for either a
"controlled substance offense" or a "crime of violence," as these terms are defined in § 4B1.2,
and who has at least two prior convictions for qualifying "controlled substance offenses" or
"crimes of violence."[10]   At the time Petitioner was sentenced, § 4B1.2(a) included a residual
clause that – with only a single exception – mirrored the residual clause of the ACCA:  "burglary
[of a dwelling], arson, or extortion, involves use of explosives, or otherwise involves conduct
that presents a serious potential risk of physical injury to another[.]"  U.S.S.G. § 4B1.2(a)(2).[11]
While the distinction between an "armed career criminal" and a "career offender" may matter
when considering the continued validity of certain prior convictions, it does not make any

---

[10] Petitioner does not contest that his instant offense of conviction or his prior federal drug conviction qualify as "controlled substance offenses" under U.S.S.G. § 4B1.2(b).

[11] This provision was amended on August 1, 2016.  The amendment deleted the residual clause from the definition of "crime of violence."  The remainder of the definition remained the same.  Because it is the relevant provision, all citations to U.S.S.G. § 4B1.2(a)(2) refer to the pre-2016 amendment version.

difference in analyzing whether *Johnson* should be applied retroactively to the advisory Sentencing Guidelines.

In order to be entitled to resentencing, Petitioner must still establish that the residual clause of the guideline provision is also unconstitutionally vague, and that his sentence was enhanced pursuant to that clause. In *United States v. Madrid*, 805 F.3d 1204, 1210-11 (10th Cir. 2015), the Tenth Circuit held *on direct appeal* that the residual clause in § 4B1.2 was just as unconstitutionally vague as its ACCA counterpart. The United States does not contest this point.[12] Nonetheless, because Petitioner's motion is a collateral attack on his sentence, he would not be entitled to relief unless such a decision applies retroactively.

The question of retroactivity is governed by the now-familiar framework set out in *Teague v. Lane*, 489 U.S. 288, 309-13 (1989) (plurality opinion). "[A]s a general matter, 'new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.'" *Welch*, 136 S. Ct. at 1264 (quoting *Teague*, 489 U.S. at 310). There are two exceptions to this general rule: first, "new substantive rules generally apply retroactively," *id*. (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)) (alterations and emphasis omitted); and second, "new 'watershed rules of criminal procedure,' which are procedural rules 'implicating the fundamental fairness and accuracy of the criminal proceeding,' will also have retroactive effect." *Id*. (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)).

The threshold question, therefore, is whether the application of *Johnson* to the Sentencing

---

[12] Though this issue is resolved for the time being in this Circuit, other courts have concluded otherwise. *See, e.g.*, *United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015). This issue is before the Supreme Court in *Beckles v. United States* (S. Ct. No. 15-8544). At oral argument, several Justices appeared to express skepticism about whether to hold the guideline provision unconstitutional on vagueness grounds. *See* Transcript of Oral Argument at 9-15, *Beckles v. United States* (S. Ct. No. 15-8544) (2016). It should go without saying that, if the Supreme Court ultimately determines that the guideline provision is *not* void for vagueness, Petitioner's claim fails.

Guidelines constitutes a new substantive rule or a new procedural rule.  "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes."  *Schriro*, 542 U.S. at 353.  "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish."  *Id*. at 351-52 (citations omitted).  By contrast, procedural rules "regulate only the manner of determining the defendant's culpability[.]"  *Id*. at 353 (emphasis omitted).  Thus, rules that alter "the range of permissible methods for determining whether a defendant's conduct is punishable" by "allocating decisionmaking authority" are procedural.  *Id*.  Procedural rules also do not create a class of persons convicted of conduct that is not lawfully criminalized, "but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise."  *Id*. at 352.

Under this framework, the Supreme Court concluded that *Johnson*'s invalidation of the ACCA's residual clause was a new substantive rule because it "changed the substantive reach of the Armed Career Criminal Act . . . ."  *See Welch*, 136 S. Ct. at 1265.  As the Court explained,

> Before *Johnson*, the Act applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause.  An offender in that situation faced 15 years to life in prison.  After *Johnson*, the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison.  The residual clause is invalid under *Johnson*, so it can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that even the use of impeccable factfinding procedures could not legitimate a sentence based on that clause.

*Id*. (quotation and citations omitted).

In contrast, the invalidity of a given sentencing guideline provision is not nearly so material, for while it may change an *advisory guideline range*, it will not change the maximum or minimum sentence authorized by statute.  Consequently, a sentence imposed – even when

predicated upon a guideline provision later held invalid – will never exceed the statutorily authorized sentence for the crime of conviction.  Thus, such a sentence is not unlawful.  *See Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (on collateral review, court upheld 360-month sentence imposed following an erroneous determination that defendant was a career offender pursuant to the Sentencing Guidelines, concluding such sentence was "not unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority").  In other words, unlike in *Johnson*, where the ACCA both imposed a statutory minimum sentence and increased the statutory maximum sentence, the sentence imposed using the problematic guideline provision can indeed be "legitimate[d]" merely by a judge's determination that the sentence was still appropriate.  *Welch*, 136 S. Ct. at 1265; *see United States v. Booker*, 543 U.S. 220, 246 (2005) (Sentencing Guidelines are advisory). Therefore, a rule that would apply *Johnson* to invalidate the U.S.S.G. § 4B1.2(a)(2) residual clause has none of the characteristics of a "substantive" rule change under *Teague*.

After all, the Supreme Court itself has classified errors in calculating the advisory guidelines range as "procedural."  *See, e.g.*, *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).  This characterization is accurate because the calculation of a defendant's offense level is just the first step in a multi-step sentencing procedure.   Importantly, while "a sentence within the applicable Guidelines range is presumptively reasonable[,]" *United States v. Terrell*, 445 F.3d 1261, 1264 (10th Cir. 2006), this presumption is only an appellate presumption, not one that a trial court can or should indulge. *See Rita v. United States*, 551 U.S. 338, 347–48 (2007); *Gall*, 552 U.S. at 40-41; *Kimbrough v. United States*, 552 U.S. 85, 90–91 (2007).  The sentencing court must assess the statutory factors under 18 U.S.C. § 3553(a) without any presumption in favor of the advisory guideline sentence.

*See Rita*, 551 U.S. at 351; *Gall*, 552 U.S. at 40; *Kimbrough*, 552 U.S. at 90–91.  Consequently, if *Johnson* now invalidates all enhancements stemming from the § 4B1.2(a)(2) residual clause, that new rule merely alters one non-binding and non-determinative step in the sentencing process.  As such, the new rule is best described as procedural.  *See Hawkins II v. United States*, 724 F.3d 915, 917-18 (7th Cir. 2013) (holding that "errors in applying advisory guidelines are procedural," and opining that a new rule that erroneously sentencing a defendant under current guidelines rather than less punitive guidelines in effect at the time of offense is a violation of the Ex Post Facto Clause would therefore not be applied retroactively under *Teague*).[13]

If the application of *Johnson* to the guidelines is a procedural rule, it can only be applied retroactively if it constitutes a "watershed" rule of criminal procedure.  *Saffle*, 494 U.S. at 495. To do so, "the rule must not only improve the accuracy with which defendants are convicted or acquitted, but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding."  *United States v. Mora*, 293 F.3d 1213, 1218-19 (10th Cir. 2002) (citation, quotation, and emphasis omitted).  This exception is a narrow one.  *Johnson v. McKune*, 288 F.3d 1187, 1197–98 (10th Cir. 2002).  Watershed rules are on the magnitude of the rule announced in *Gideon v. Wainwright*, 372 U.S. 335 (1963).  *Mora*, 293 F.3d at 1219 (citing *Saffle*, 494 U.S. at 495).

Describing the constitutional heft a procedural rule must have to graduate to "watershed" status is assisted to some extent by pointing to decisions that were held *not* to be of watershed quality.  For example, the Tenth Circuit has held that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which upended federal charging practice by holding that any fact that increases the

---

[13] I emphasize that the sentence that Petitioner now seeks to invalidate is one imposed upon him *after* the Supreme Court's decision in *Booker* held the Sentencing Guidelines to be advisory only.  I render no opinion here about whether the retroactivity analysis would be the same for pre-*Booker* sentences imposed under a then-mandatory Sentencing Guidelines regime.

penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, did *not* qualify as a watershed decision.  *See Mora*, 293 F.3d at 1219. The same is true for *Booker*, even though its seismic effect revolutionized federal sentencing. S*ee United States v. Bellamy*, 411 F.3d 1182, 1186-88 (10th Cir. 2005) (*Booker* constituted a non-watershed procedural rule under *Teague* analysis).  Compared against *Apprendi* and *Booker*, the application of *Johnson* to the advisory guidelines is not a watershed procedural rule.[14]

Because the application of *Johnson* to the guidelines would be a non-watershed procedural rule, it would not have retroactive effect to Petitioner's sentence.  Therefore, I recommend denying the Motion on that ground alone.  If the Court agrees, then the Court need not reach Petitioner's other arguments about whether his prior aggravated assault conviction still qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(1).  Nonetheless, I continue my analysis in the event the Court disagrees or desires to rule in the alternative.

### B.  Is the Residual Clause Relevant to Petitioner's Sentence?

A threshold question is whether the residual clause was used *at all* in characterizing Petitioner's aggravated assault conviction as a "crime of violence."  After all, if it qualifies as a "crime of violence" under the force clause of § 4B1.2(a)(1), then the residual clause of § 4B1.2(a)(2) (and, by extension, the *Johnson* decision) is not relevant.[15]  More ominous for the Petitioner, if his predicate conviction qualified under the force clause, then *Johnson* did not endow Petitioner with a new claim of relief and his Motion is inexcusably tardy under 28 U.S.C. § 2255(f) because it was filed well more than a year after the Amended Judgment was filed.

---

[14] In recommending that the Court hold that *Johnson* should not be applied retroactively to cases on collateral review, I join the thoughtful opinion of United States Magistrate Judge Gregory Wormuth in *Valdez v. United States*, CV-16-727-JB/GBW (Doc. 10).

[15] The United States did not alternatively argue in its response that the inclusion of "aggravated assault" in Application Note 1 to § 4B1.2 is a separate basis on which the Court could find it to be a crime of violence. However meritorious that argument might have been, I choose not to address it *sua sponte*.

Unfortunately, the short answer to the question of whether the residual clause applied at all to Petitioner's sentence is that we cannot tell.  As set forth *supra* at 2-4, there was no mention at the plea or sentencing hearings, or in the plea agreement, PSR, or judgment, of exactly how Petitioner's conviction for New Mexico aggravated assault with a deadly weapon qualified as a crime of violence under § 4B1.2(a).  It appears as if all participants in the sentencing process simply assumed that Petitioner was a career offender and his advisory guideline range should reflect the same.  Because of the apparent unanimity on that score, there was no reason for the probation officer, the parties, or the Court to specify the particular legal reason why the conviction qualified as a crime of violence.

To his credit, and understanding the analytical dilemma now facing the Court, Petitioner argues that his aggravated assault conviction does not qualify as a crime of violence under the force clause because that statute "does not require as an element the intentional use of violent force."  Doc. 1 at 13.[16]

## C.  Is NM Aggravated Assault with a Deadly Weapon Still a Crime of Violence?

Under New Mexico law, aggravated assault against a household member is a fourth-degree felony and is defined as:

(1) unlawfully assaulting or striking at a household member with a deadly weapon; or

(2) willfully and intentionally assaulting a household member with intent to commit any felony.

N.M.S.A. § 30-3-13(A) (1978).

There is no dispute between the parties as to the precise nature of Petitioner's 2013 conviction for aggravated assault.  The indictment in that case reflects that Petitioner was

---

[16] As I stated *supra* at note 15, I do not address Petitioner's further argument that the inclusion of aggravated assault in the commentary to U.S.S.G. § 4B1.2 is of no moment after *Johnson*.  Doc. 1 at 18-20.  Not only did the United States not respond to this argument, it becomes moot given the disposition I recommend herein.

charged in Count 2 with "Aggravated Assault Against a Household Member (Deadly Weapon),"
in violation of NMSA § 30-3-13.   Doc. 5-1.   The grand jury charged that Petitioner "did
intentionally and unlawfully assault or strike at [the victim], a household member, with a knife,
which was a deadly weapon[.]"   *Id.* The Repeat Offender Plea and Disposition Agreement
reflects that Petitioner pleaded no contest to that count as charged.   Doc. 14-1 at 1-2.   The
Judgment reflects that the state court sentenced Petitioner to 18 months in prison for that count,
suspended the sentence, and placed him on probation for 18 months.   Doc. 14-2 at 1-2.

For his part, Petitioner concedes that he "was convicted of violating Section 30-3-
2(A)[.]"   Doc. 10 at 14.   In doing so, he inadvertently transposes the citation for New Mexico's
generic aggravated assault in place of its statute prohibiting aggravated assault against a
household member.   I find this error of no consequence because subsection A of both sections
requires the offender to "unlawfully assault[] or strik[e] at [the victim] with a deadly weapon[.]"
*Compare* N.M.S.A. § 30-3-2(A) (1978) (aggravated assault) *with* § 30-3-13(A)(1) (aggravated
assault against a household member).   The only difference between these subsections is that one
of them requires the victim to be a "household member," an element that neither party contests in
this Motion.   Putting aside the inadvertent transpositional error, it is undisputed that Petitioner
was convicted of violating § 30-3-13(A)(1).

Nonetheless, Petitioner argues that aggravated assault against a household member with a
deadly weapon under New Mexico law is not a crime of violence for Sentencing Guidelines
purposes because one of the ways in which it can be committed is by "assaulting" the victim
with a deadly weapon.   Doc. 5 at 11-15.   That, according to Petitioner, requires reference to New
Mexico's assault statute, which forbids among other things "the use of insulting language toward
another impugning his honor, delicacy or reputation."   N.M.S.A. § 30-3-1(C) (1978).   Petitioner

13

contends that such behavior does not rise to the level of having "as an element, the use, attempted use, or threatened use of physical force against the person of another" that the Guidelines' definition of "crime of violence" requires.  Doc. 5 at 13.  Petitioner goes so far as to suggest that one could be convicted of the same crime he was if he "simply yell[ed] an insult while in possession of any deadly weapon."  *Id.* at 15.

Fortunately, the Court does not have to wrestle with the linguistic and metaphysical gymnastics that Petitioner's hypothetical suggests.  Eighteen days after Petitioner filed his reply brief in this case, the Tenth Circuit squarely foreclosed his argument.  In *United States v. Maldonado-Palma*, the Tenth Circuit held that New Mexico's aggravated assault with a deadly weapon statute (N.M.S.A. § 30-3-2(A)) was categorically a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2015).  839 F.3d 1244, 1248-50 (10th Cir. 2016).  Specifically, the court held that this statute "has as an element the use, attempted use, or threatened use of physical force against the person of another."  *Id.* at 1244 (quoting U.S.S.G. § 2L1.2 (cmt. n.1(B)(iii)).

In so holding, the court rejected the very claim that Petitioner makes here, that the statute could be violated by the "use of insulting language toward another impugning his honor, delicacy or reputation" while possessing a deadly weapon.  *Id.* at 1249.  The Tenth Circuit made quick work of that argument, concluding that New Mexico's uniform jury instructions make clear that the aggravated assault with a deadly weapon statute requires the offender to "use" the deadly weapon.  *Id.* at 1249-50.  The court emphasized that "aggravated assault with a deadly weapon under New Mexico law involves the threatened use of physical force *regardless of how the underlying assault is committed*."  *Id.* at 1249 n.6 (emphasis added).[17]

---

[17] *Maldonado-Palma* now provides the Sentencing Guidelines counterpart decision to *United States v. Ramon Silva*, 608 F.3d 663, 669-74 (10th Cir. 2010), which had held the same New Mexico statute to be a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i).  Each decision holds that aggravated assault with a deadly weapon under New Mexico law has as an element the use, attempted use, or threatened use of physical force against the person of another.

In his opening Motion, and to his credit, Petitioner alerted the Court that *Maldonado-Palma* was pending and that the Tenth Circuit would be deciding in that case whether New Mexico's aggravated assault with a deadly weapon statute is a crime of violence under the force clause of U.S.S.G. § 4B1.2(a)(1).  Doc. 1 at 14 n.4.  On October 25, 2016, the Tenth Circuit rendered its decision and resolved the question in a manner that is binding on this Court and fatal to Petitioner's Motion:  New Mexico's aggravated assault with a deadly weapon statute is a "crime of violence" for Sentencing Guidelines purposes without reference to the residual clause. Given that there is no textual difference between the statute at issue in *Maldonado-Palma* and the statute of which Petitioner was convicted beyond the special identify of the victim, the Court should conclude that Petitioner's conviction was properly used to enhance his adjusted advisory guideline range and he remains a career offender under U.S.S.G. § 4B1.1.

### III. CONCLUSION

The Court should hold that *Johnson* does not apply retroactively to the Sentencing Guidelines under the *Teague* analysis because it is a non-watershed procedural rule.  I recommend denying Petitioner's motion on that ground.  Should the Motion not be denied for that reason, I recommend that the Court follow the Tenth Circuit's binding decision in *Maldonado-Palma* and conclude that New Mexico's aggravated assault against a household member (deadly weapon) is a crime of violence under U.S.S.G. § 4B1.2(a), even after excising its residual clause.  I further recommend that Petitioner's motion be denied on that ground.

**IT IS SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

15

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**